# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-CR-0101-CVE |
| ) | (18-CV-0639-CVE-JFJ) |
| DONALD RAY OLDHAM, JR., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 24). Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Defendant argues that the United States government breached a plea agreement by filing criminal charges against him in the Western District of Missouri, because the plea agreement in this case contained a provision barring any further prosecution of defendant. Dkt. # 24, at 4. He also argues that his attorney was ineffective for failing to file a motion to suppress evidence, for advising defendant to accept the plea agreement, and for failing to file a notice of appeal following the sentencing hearing. Id. at 5. Plaintiff has filed a response (Dkt. # 37), defendant has filed a reply (Dkt. # 38), and defendant's § 2255 motion is ripe for adjudication.

**I.**

On May 7, 2018, a grand jury returned an indictment charging defendant with a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant made his initial appearance on May 17, 2018, and Ryan Ray, a member of the Court's Criminal Justice Act Panel, was appointed to represent defendant. Ray received discovery materials from plaintiff and reviewed the discovery with defendant to determine if there were any colorable arguments for the suppression of evidence under the Fourth Amendment. Dkt. # 37-1, at 4-5. Ray states that the discovery materials showed that the case arose out of a consensual encounter with law enforcement officers that took place on February 20, 2018. Id. at 4. The officers represented that they met defendant outside his place of business and asked if they could enter. Id. Defendant permitted the officers to enter his business and, at some point during the encounter, the officers asked if defendant was in possession of any weapons. Id. Defendant acknowledged that he was carrying a loaded firearm, and the officers already knew that defendant had previously been convicted of a felony. Id. Defendant told Ray that the discovery materials accurately depicted the events leading to his arrest, and Ray did not believe that there were any colorable Fourth Amendment issues that could be raised in a pretrial motion to suppress evidence. Id. at 5. Ray states that he would have fully litigated any "even potentially meritorious suppression motion" and would have pursued any such issue on appeal, but he found no potentially meritorious suppression issues in this case. Id.

At defendant's request, Ray initiated plea negotiations with plaintiff and plaintiff offered defendant a plea agreement. Id. at 5-6. The parties stipulated that the career offender provision of the sentencing guidelines and the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA), did not apply, and plaintiff agreed to recommend a sentence at the low end of the advisory guideline range.

Dkt. # 17, at 11. The plea agreement included the following provision concerning the possible future prosecution of defendant for other crimes:

> The United States shall not initiate additional criminal charges against the defendant in the Northern District of Oklahoma that, as of the date of defendant's acceptance of this agreement, arise from its investigation of defendant's actions and conduct giving rise to the instant Indictment, save and except crimes of violence and criminal acts involving violations investigated by the United States Internal Revenue Service. The defendant understands, however, that this obligation is subject to all "Limitations" set forth below, and that the United States Attorney's Office for the Northern District of Oklahoma is free to prosecute the defendant for any illegal conduct (i.e. violation of federal criminal laws) not discovered by or revealed to the Government during its investigation or occurring after the date of this agreement.

Id. at 6-7. Ray discussed with defendant the possibility that additional criminal charges could be filed against defendant in another district, and Ray advised defendant that the non-prosecution agreement did not bind the United States Attorney in any other federal judicial district from bringing criminal charges against defendant. Id. Ray explained that defense counsel in another criminal case could argue that the plea agreement had some effect on a separate prosecution, but it was uncertain that the non-prosecution agreement in this case would have any effect on criminal charges filed in another jurisdiction. Id. at 7. Ray states that he never told defendant that criminal investigations in any other jurisdiction would cease if defendant pled guilty pursuant to the plea agreement. Id.

On June 5, 2018, defendant appeared for a change of plea hearing and he was represented by Ray at the hearing. Defendant stated that he had an opportunity to review the plea agreement with his attorney before the hearing, and he stated that he understood the plea agreement. Dkt. # 31, at 8-9. The plea agreement contained an appellate and post-conviction waiver, and the Court reviewed the appellate and post-conviction waiver with defendant. Id. at 14. Defendant acknowledged that he waived the right to "appeal [his] conviction and sentence pursuant to 28, U.S.C., Section 1291

and/or 18 U.S.C., Section 3742(a)," except that he reserved the right to appeal a sentence that exceeded the statutory maximum. Id. at 14. Defendant also agreed to waive the "right to collaterally attack [his] conviction and sentence pursuant to 28, U.S.C., Section 2255 except for claims of ineffective assistance of counsel." Id. at 15. The Court asked defendant to explain what he did to commit the offense, and he stated that he "had the Glock in [his] shop." Id. at 21. The Court asked more specific questions about the offense, and defendant admitted to the essential elements of an offense under § 922(g)(1). Defendant also stated that he kept a firearm at his store to protect himself and his employees, because nearby businesses had been robbed and a clerk had been killed. Id. at 25. The Court asked Ray if he had calculated the advisory guideline range for defendant's offense, and Ray represented that the advisory guideline range would be 46 to 57 months.

A presentence investigation report (PSR) was prepared by the United States Probation Office, and the advisory guideline range was substantially lower than anticipated by the parties. The total offense level was 12 and his criminal history category was IV, and the advisory guideline range was 21 to 27 months. On August 28, 2018, defendant was sentenced to 21 months imprisonment and the sentence was ordered to run concurrently with a prior sentence imposed in a Mississippi state court case. Ray states that he met with defendant at the United States Marshals Office following the sentencing hearing to discuss the possibility of an appeal. Dkt. # 37-1, at 3. Defendant advised Ray that he did not wish to pursue an appeal, and Ray did not believe that there was any basis for an appeal. Id.

On July 11, 2018, defendant had been charged with drug conspiracy, possession of methamphetamine with intent to distribute, conspiracy to commit money laundering, and conducting monetary transactions involving specified unlawful activity in the Western District of Missouri.

United States of America v. David McKinnie and Donald R. Oldham, Case No. 18-3074-01/01-CR-S-BCW (W.D. Mo.). Defendant was not arrested on these charges until September 5, 2018, and he was transferred to the Western District of Missouri for proceedings on the new charges.

On December 3, 2018, defendant filed a § 2255 motion (Dkt. # 24) arguing both that plaintiff breached the plea agreement by filing criminal charges against him in another judicial district and that his attorney was ineffective for advising him to plead guilty. Defendant also asserts a claim based on his attorney's failure to file a notice of appeal, and he argues in a supplemental brief (Dkt. # 26) that Ray was ineffective for failing to file a motion to suppress evidence. The Court directed plaintiff to file a response to defendant's § 2255 motion. Plaintiff filed a response (Dkt. # 37) and Ray has provided an affidavit (Dkt. # 37-1) in support of the response. Defendant has filed an objection (Dkt. # 36) to Ray's affidavit and a reply (Dkt. # 38) in support of his § 2255 motion.

## II.

### A.

The Court will initially consider defendant's claim that he directed Ray to file a notice of appeal and that Ray failed to comply with this request. In his § 2255 motion, defendant states that "[c]ounsel failed to file either notice of appeal or file first appeal as requested of him," and he claims that he first learned of this fact on October 29, 2018. Dkt. # 24, at 4. Defendant states in his reply that "defendant Did specify to Mr. Ray he wished to appeal after he was notified on [September] 20, 2018 of the Indictment in Missouri, as this was a Breach of his reasonable understanding of the agreement." Dkt. # 38, at 5-6 (emphasis in original). He explains that he could not have known of the need for an appeal before September 20, 2018 and "upon his knowledge" he asked Ray to file an appeal after September 20, 2018. Plaintiff responds that Ray met with defendant to discuss the

5

possibility of filing an appeal, and defendant specifically advised Ray that he did not wish to file an appeal. Dkt. # 37, at 23-25.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

The Supreme Court has clearly established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). While there is no bright-line rule requiring a defense attorney to ask the defendant if he wishes to appeal, an attorney has a duty under the Sixth Amendment to the United States Constitution to consult with his client about the possibility of an appeal if the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. This situation is an exception to the general rule that a defendant must show that his attorney's error had an adverse effect on the proceedings to prevail on a claim on ineffective assistance of counsel, because a defense attorney's failure to file an appeal results in the defendant's forfeiture of a judicial proceeding. Id. at 483. A criminal defendant is not required to show that the appeal would have had merit. Id. at 486. The Tenth Circuit has held that an attorney who disregards a defendant's request to file a notice of appeal is ineffective and this error is presumptively prejudicial. United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003). The remedy for an attorney's failure to file an appeal as requested by a defendant is granting the defendant leave to file a delayed appeal. United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005).

Defendant argues that he asked Ray to file a direct appeal asserting that plaintiff breached the plea agreement, and he asserts that Ray was ineffective for failing to file a notice of appeal. However, his allegations concerning the alleged request to file a notice of appeal are vague and contradictory. In his § 2255 motion, defendant states that Ray did not file a notice of appeal as requested by defendant, and he first became aware of this fact on October 29, 2018. Dkt. # 24, at 4-5. Defendant's motion and related filings show that the primary purpose of the appeal would have been to challenge the filing of additional criminal charges against him in the Western District of

Missouri. Dkt. # 25, at 2. However, defendant's sentencing hearing in this case took place on August 28, 2018, a judgment and commitment (Dkt. # 22) was entered on August 29, 2018, and defendant was not arrested on the charges filed in the Western District of Missouri until September 5, 2018. Ray's affidavit states that he met with defendant following the sentencing hearing, and there is nothing in the record suggesting that either defendant or Ray were aware of the new criminal charges at that time. Defendant's reply (Dkt. # 38) states that he "DID specify to Mr. Ray he wished to appeal after he was notified on [September] 20, 2018 of the Indictment in Missouri, as this was a Breach of his reasonable understanding." Dkt. # 38, at 5 (emphasis in original). He further states that he could not have known of the "need" to file an appeal until September 20, 2018, but "upon his knowledge he did notify counsel Ryan Ray of need of appeal." Id. at 6. By September 20, 2018, any notice of appeal filed in this case would have been untimely, and defendant makes no allegations that he contacted Ray within 14 days of entry of the judgment and commitment to notify Ray that defendant wished to proceed with an appeal.

The Court has reviewed defendant's § 2255 motion and subsequent filings and finds that defendant's vague allegations concerning Ray's failure to file a notice of appeal are wholly lacking in credibility. Ray states that he visited with defendant following the sentencing hearing, and defendant advised Ray that he did not wish to pursue an appeal. Dkt. # 37-1, at 3. This was consistent with their prior discussions that there would likely be no basis to appeal. Defendant received a sentence at the low end of the sentencing guideline range, and the guideline range was substantially lower than anticipated when defense counsel negotiated the plea agreement. Defendant claims that he wanted to file an appeal after learning of the new criminal charges against him in the Western District of Missouri, but his allegations concerning any alleged request that Ray file an

8

appeal are vague and contradictory. Defendant provides different dates for when he learned of the alleged need to file an appeal and when he contacted Ray, and this information would uniquely be in the possession of defendant. The Court declines to hold an evidentiary hearing to resolve a factual dispute created wholly by a defendant's contradictory allegations when he would be the only person who could provide information to resolve the alleged dispute. In any event, defendant has made no allegation that he contacted Ray to file an appeal within 14 days of entry of the judgment and commitment and, even if the Court relied on the date of September 20, 2018 stated in defendant's reply (Dkt. # 38), defendant's appeal would still have been untimely. The Court finds that defendant has failed to allege a colorable claim that he asked Ray to file a notice of appeal, and defendant is not entitled to an evidentiary hearing on this claim.

**B.**

Defendant argues that plaintiff breached the plea agreement by filing criminal charges against him in another district, and he also claims that Ray was ineffective for advising defendant to plead guilty pursuant to the plea agreement. Dkt. # 24, at 3-4; Dkt. # 38, at 5. Plaintiff responds that the plea agreement did not bar the filing of criminal charges against him in other federal judicial districts, and Ray correctly advised defendant about the limitations of the plea agreement. Dkt. # 37, at 20-23.

Courts interpreting a plea agreement apply general principles of contract law and "look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." United States v. Rodriguez-Rivera, 518 F.3d 1208, 1212-13 (10th Cir. 2008). Any ambiguities in the plea agreement are construed against the government as the drafter of the plea agreement. United

9

States v. Villa-Vazquez, 536 F.3d 1189, 1196 (10th Cir. 2008). If the government breaches a plea agreement, the defendant is entitled to a remedy that "restores the meaningfulness of his bargain." United States v. Burke, 633 F.3d 984, 994 (10th Cir. 2007).

In this case, the plea agreement contained an agreement that plaintiff would refrain from bringing additional criminal charges against defendant in the Northern District of Oklahoma. The plea agreement provides that:

> The United States shall not initiate additional criminal charges against the defendant in the Northern District of Oklahoma that, as of the date of the defendant's acceptance of this agreement, arise from its investigation of the defendant's actions and conduct giving rise to the instant Indictment, save and except crimes of violence and criminal acts involving violations investigated by the United States Internal Revenue Service. The defendant understands , however, that this obligation is subject to all "Limitations" set forth below, and that the United States Attorney's Office for the Northern District of Oklahoma is free to prosecute the defendant for any illegal conduct (i.e., violation of federal criminal laws) not discovered by or revealed to the Government during its investigation or occurring after the date of this agreement.

Dkt. # 17, at 6-7. The "Limitations" provision states that the plea agreement is "binding and enforceable upon the Office of the United States Attorney for the Northern District of Oklahoma, but in no way limits, binds or otherwise affects the rights, powers, duties or obligations of any state or local law enforcement agency . . . ." Id. at 12. The plea agreement also does not bar suits against defendant by other governmental entities. Id.

Defendant argues that he "reasonably understood" the plea agreement to prohibit further prosecution of him in any federal judicial district, and it appears that defendant believes that this extended to matters unrelated to charge to which he pled guilty. Dkt. # 24, at 4; Dkt. # 26, at 4. However, the plain language of the plea agreement states that defendant entered into a non-prosecution agreement with the United States Attorney for the Northern District of Oklahoma only,

and no reasonable person would have understood the agreement to bar further prosecution in any federal district court. At the change of plea hearing, defendant stated that he had an opportunity to read the plea agreement and he had reviewed it with Ray, and there were no agreements between the parties that were not included in the plea agreement. Dkt. # 31, at 8. The Court accepted defendant's sworn statements at the change of plea hearing that he fully understood the terms of the plea agreement, and the Court relied on these statements when finding that defendant was knowingly and voluntarily changing his plea. The plea agreement bars the United States Attorney for the Northern District of Oklahoma from bringing additional charges, and plaintiff has complied with the no further prosecution agreement. Additional criminal charges were brought against defendant in the Western District of Missouri, but the plea agreement did bar the prosecution of defendant in other federal judicial districts. The Court finds that defendant's belief that he could not be prosecuted in any other federal judicial district was not a reasonable interpretation of the language of the plea agreement, and he has not shown the filing of charges against him outside of the Northern District of Oklahoma was a breach of the plea agreement.

Defendant also argues that Ray provided ineffective assistance of counsel by advising him to plead guilty pursuant to the plea agreement, and he claims that Ray failed to advise him that the federal prosecutors in other judicial districts would be permitted to bring new charges against him. Dkt. # 24, at 5; Dkt. # 26, at 2. Ray states that he specifically discussed with defendant the possibility that charges could be brought against defendant in another federal judicial district, and Ray advised defendant that the plea agreement in this case would not be binding on federal prosecutors outside of the Northern District of Oklahoma. Dkt. # 37-1, at 6. Ray told defendant he could argue that the plea agreement in this case limited the ability of prosecutors in another district

11

to bring new charges, but Ray advised defendant that it was uncertain whether the plea agreement in this case would provide any defense to future criminal charges. Id. at 7. Ray's advice to defendant is consistent with the language of the plea agreement, and there is no evidence in the record suggesting that plaintiff or Ray made any representation to defendant that the plea agreement would prohibit the filing of criminal charges against him in another district. Instead, defendant repeatedly alleges that the "understood" that the plea agreement prevented the filing of additional charges in another district, but he has not shown that the belief was based on the language of the plea agreement or the advice of counsel. The Court finds that Ray's advice concerning the effect of the no further prosecution provision of the plea agreement was reasonable, and defendant has not shown that Ray provided ineffective assistance of counsel.

## C.

Defendant alleges that Ray should have filed a motion to suppress evidence based on an illegal entry into his business. Dkt. # 26, at 2-3. Ray states that he reviewed the discovery materials with defendant, and defendant agreed that the evidence provided by agents who visited defendant's business was accurate. Dkt. # 37-1, at 4. Based on this evidence, Ray states that he had no reasonable basis to file a motion to suppress, and he would have fully explored any "potentially meritorious suppression motion" if there had been a colorable suppression issue. Id. at 5.

Defendant argues that he was subjected to a custodial interrogation in his business, and he further claims that a large number of law enforcement officers entered his business without a search warrant. Dkt. # 26, at 3. He even suggests that officers made a forced entry into his business and he describes the conduct of the officers as "outrageous." Id. Ray states that he reviewed the discovery materials and the police reports described the encounter with defendant as consensual.

Dkt. # 37-1, at 4. The officers stated that they approached defendant's business and met him outside, and defendant agreed to speak to them inside the business. Id. The officers asked defendant if he was in possession of a weapon, and defendant admitted that was in possession of a firearm. Id. The officers had prior knowledge that defendant had been convicted of a felony, and this gave rise to probable cause arrest defendant for being a felon in possession of a firearm. Id. Ray reviewed the discovery materials with defendant, and defendant confirmed that the version of the events stated by the officers was accurate. Id. at 4-5. Based upon the discovery materials and defendant's confirmation that these materials were accurate, Ray concluded that "(i) [defendant] was not seized when the agents entered his business with his consent, (ii) [defendant] was not in custody or the functional equivalent of custody when he made the statement to law enforcement that he had a firearm, and (iii) law enforcement accordingly had probable cause to seize the firearm for [defendant's] person based upon his constitutionally voluntary statement." Id. at 5.

Defendant has not shown that there was a colorable basis for Ray to file a motion to suppress, and Ray's decision not pursue the suppression of evidence was reasonable. The discovery materials established that defendant had a consensual encounter with law enforcement officers, and defendant confirmed that the discovery materials accurately portrayed how the encounter occurred. Defendant now attempts to offer a new version of the events leading to his arrest, but his allegations are wholly inconsistent with Ray's summary of the discovery materials and defendant does not actually allege that he made any request to Ray to file a motion to suppress before he pled guilty. Ray states that the first time he received notice that defendant wanted to pursue a motion to suppress was when defendant's wife sent him an e-mail after the guilty plea, and she asked Ray to "look in to [defendant's] arrest." Id. at 9. Ray responded to her that defendant voluntarily permitted police

13

officers to enter his business and he voluntarily answered questions about his possession of a firearm, and there was no basis to suppress the firearm or defendant's statements. Id. This was accurate advice based on the discovery materials. Ray states that it is his standard practice to explore any "potentially meritorious suppression motion" and he would have fully litigated any such issue. The Court finds that Ray acted reasonably by declining to file a motion to suppress evidence in this case, and defendant has not shown that Ray provided ineffective assistance of counsel.

### III.

Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 24) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability on any issue raised in defendant's § 2255 motion.

**DATED** this 6th day of July, 2021.

                                                    CLAIRE V. EAGAN
                                                    UNITED STATES DISTRICT JUDGE